IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ALBERT CHRISTIAN,            )
    Plaintiff,             )
                             )
    v.                     )        05  C 2735
                             )
ILLINOIS STATE BOARD OF      )
EDUCATION,                   )
    Defendant.             )

## MEMORANDUM AND ORDER

After 26 years of employment with the Illinois State Board of Education ("ISBE"), plaintiff Albert Christian sued the ISBE based on events occurring in 2004 and 2005, alleging that the ISBE discriminated against him and created a hostile work environment based on his race (African-American). The ISBE's motion for summary judgment is before the court. For the following reasons, the motion is granted.

**I.    Background**

    **A.    Scope of the Charge**

Mr. Christian filed a charge of discrimination with the EEOC on December 27, 2004. His fact statement describes, among other things, events which post-date his EEOC charge. The parties disagree as to whether these events are relevant for summary judgment purposes. According to Mr. Christian, the post-charge events are relevant because they are "like or reasonably related to the allegations of the EEOC charge" and grow out of his charge. In support, Mr. Christian directs the court's attention to *Fernando v. Rush-Presbyterian-St. Luke's Medical Center*, 882 F. Supp. 119, 122 (N.D. Ill. 1995).

In that case, the plaintiff's EEOC charge and accompanying affidavit alleged that he was subject to different terms of employment based on his race. In his federal complaint, however,

the plaintiff alleged that the defendant had engaged in racial discrimination "in the form of an inherently discriminatory system and racial slurs." *Id*. The court repeated the well-known rule that a plaintiff may not bring claims in federal court which are beyond the scope of the EEOC charge because "[t]he condition precedent of an EEOC charge serves the dual purpose of preserving the primary jurisdiction of the EEOC and providing both the EEOC and the employer with an opportunity to settle the discrimination allegations without litigation." *Id*. It then concluded that the federal claims were "like or reasonably related" to the EEOC charge of being subject to different terms of employment because the federal and EEOC charges were all, in essence, disparate treatment claims.

Notably, however, the court excluded evidence of wrongs which post-dated the allegedly discriminatory events outlined in the EEOC charge because those incidents had not been presented to the EEOC. *Id*. at 123. This result is consistent with Seventh Circuit precedent holding that alleged instances of discrimination occurring after an EEOC charge is filed (other than claims of retaliation) cannot be raised in a federal case because they are outside the scope of the charge. *See Conner v. Illinois Dept. of Natural Resources*, 413 F.3d 675, 680 (7th Cir. 2005) (district court correctly excluded evidence relating to the plaintiff's failure to receive a promotion in December of 2002 because it "was necessarily outside the scope of the EEOC charges" since the EEOC charges were dated November 1, 2002). This rule is based on the principle that the EEOC needs to have the relevant facts before it so it can investigate and attempt to resolve the plaintiff's claim prior to the filing of a federal action. *Id*. Accordingly, the court will not consider instances of alleged discrimination occurring after December 27, 2004 (the date that Mr. Christian filed his charge of discrimination with the EEOC).

### B. Motions to Strike

The court next considers the parties' motions to strike portions of the opposing side's Rule 56 statements. In Mr. Christian's motion to strike, he contends that the ISBE's statements have multiple sub-parts in an improper attempt to circumvent the limitations on the number of paragraphs allowed in a statement of facts. He also argues that the total number of paragraphs prejudiced him because it forced his lawyer "to comb through lengthy subparagraph [sic] in an effort to provide a response consistent with the requirements of Local Rule 56.1." Plaintiff's Motion to Strike at ¶ 5.

The ISBE's grouping of facts into separate subparts occurs at paragraph 10, where the ISBE lists all of the factual bases for Mr. Christian's claim of racial harassment and Mr. Christian admits that the list is complete. The ISBE then uses each instance of harassment as a point heading and groups related facts together under that point heading.

As an initial matter, the court appreciates that this appears, at first blush, to be a logical way to proceed in organizing the facts. However, the court found this system to be very difficult to follow, as it spent a significant amount of time (ultimately, to no avail) trying to create a chronological summary of Mr. Christian's employment with the ISBE. Mr. Christian's 40 supplemental facts, which were presented without any point headings, did not help matters.

The parties' fact summaries in their briefs gave the court a general sense of what happened during Mr. Christian's tenure with the ISBE, but the court was reduced to flipping through the parties' Rule 56 statements in a constant and generally unsuccessful effort to match up the short chronological presentations of the facts in the briefs with the differently organized and far more comprehensive Rule 56 statements. Finally, Mr. Christian's consistent failure to

cite to any specific facts in the argument section of his memorandum opposing summary judgment was the cherry on top of the sundae of confusion. The court respectfully suggests that in the future, counsel may wish to consider providing a chronological summary of all of the relevant facts, with point headings, in their Rule 56 fact statements. They can then group the facts – with citations to the record – in their briefs as they deem appropriate and tie the relevant facts into the applicable legal standards.

With this in mind, the court turns once again to Mr. Christian's motion to strike the ISBE's facts. The multi-part fact statement, as noted above, is a list of all of the alleged instances of discrimination. The ISBE expands on each instance in the remainder of its fact statement, and the multi-part fact was meant to serve as an overview of Mr. Christian's claims, as opposed to an attempt to circumvent the rules. Thus, Mr. Christian's motion to strike is denied.

The ISBE has also filed a motion to strike directed at Mr. Christian's statement of additional facts. The court will address the objections below:

Objection that ¶ 19 is speculative – This paragraph summarizes a declaration from Michael Turk and states, among other things, that Mr. Turk observed Mr. Wolfe interact with Mr. Christian in a "hostile" way. The court assumes that this sentence is the subject of the objection, which is overruled as Mr. Turk is entitled to testify as he sees fit regarding his own observations.

Objection that ¶ 21 contains hearsay – Mr. Christian states that he "observed that his employment under Robert Wolfe was becoming more stressful." The ISBE contends that this statement is conclusory as well as inadmissible hearsay. The court interprets it as stating Mr.

4

Christian's opinion about his own employment under the supervision of Mr. Wolfe. As such, the ISBE's objections are overruled.

Objection that ¶ 39 is conclusory – This paragraph is supported by Sydney Cochran's declaration and states "On February 4, 2004, Cochran approached Robert Wolfe and attempted to ask him a question concerning her work. Mr. Wolfe responded by yelling at Cochran. Mr. Wolfe yelled in a loud voice, "'What are you asking me for? I don't know.' Cochran never heard Mr. Wolfe used that tome [sic] of voice with any of the whiter [sic] Principal Consultants." The court assumes that the ISBE's objection centers on the last sentence of the above quote and the fact that it does not list names of the white Principal Consultants. This sentence is stricken, as there is no foundation for any of the alleged conversations between Mr. Wolfe and the unspecified Principal Consultants.

Objection that ¶¶ 27-33 fail to cite to supporting portions of the record – Paragraphs 27, 28, 29, 30, 31, and 32 contain quotes from email messages and cite to Exhibits C, D, and E but those exhibits do not match up with the quotes (and in fact, Exhibit D isn't even an email). Hence, these paragraphs are stricken. Paragraph 33 states "Wolfe admits that at the time of the interim evaluation, he believed Plaintiff's attendance was satisfactory" and cites to a portion of Mr. Wolfe's deposition that is not included in the excerpts provided by Mr. Christian, but is in a portion provided by the ISBE.[1] Because the fact statement correctly summarizes evidence that is before the court (albeit not in a way which makes it easy to verify), this portion of ¶ 33 stands.

---

[1] The court feels compelled to note that its task in matching up Mr. Christian's fact statements with the record was unnecessarily complicated by his failure to ensure that the table of contents for his exhibits matched up with the actual exhibits. Thus, the incomplete excerpts from Mr. Wolfe's deposition were located at the tab which was supposed to contain Mr. Evans' deposition transcript.

The final sentence, however, cites to Exhibit K, and neither side's exhibits contain an Exhibit K. Thus, this sentence is stricken and the court will not consider it.

Objection that ¶¶ 3-5, 7,9,11-12, 14, 18-19, 21, 23-24, 33, 37 and 40 contain multiple facts – The court finds it ironic that both sides sought to strike each other's multi-part fact statements. The specified facts do, indeed, contain more than one sentence but the facts are related and the ISBE was able to respond in an unconfusing manner. Thus, these objections are overruled. With these preliminary matters out of the way, the court turns to the facts of this case.

**C.    Facts**

Normally, the court would provide a chronological summary of the relevant facts. As discussed above, however, the filings in this case do not lend themselves to a neat summary. After expending a substantial amount of time trying to organize the facts, the court decided that it would deviate from its usual approach to summary judgment motions and would instead use the parties' briefs as a map in navigating through the Rule 56 statements and in particular would focus on Mr. Christian's arguments, as he bears the burden of showing that he is entitled to a trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Thus, in the interests of ruling on the merits, it loaded the parties' submissions onto its computer in searchable WordPerfect form, and used the "find" function to hunt for facts which appeared to support Mr. Christian's arguments. As discussed below, the court is not required to do this, but strongly preferred to reach the merits and did not feel that providing an opportunity to redo the briefs would be helpful.

With this in mind, the court invites the reader to join it in piecing together the relevant facts which the court has set out below in the discussion section. As a guide, the court notes that

Mr. Christian contends in this case that the ISBE discriminated against him and created a hostile work environment based on his race, and the ISBE seeks summary judgment as to both claims.

## II.     Discussion

### A.     Standard for a Motion for Summary Judgment

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact." Fed. R. Civ. P. 56(c). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Valenti v. Qualex, Inc.*, 970 F.2d 363, 365 (7th Cir. 1992). The nonmoving party, however, may not merely rest upon the allegations or details in his pleadings, but instead, must set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The determination as to what facts are "material" in employment discrimination cases depends upon the substantive law of employment discrimination, and the burden of proof applicable under the law. *Williams v. Williams Electronics, Inc.*, 856 F.2d 920, 922 (7th Cir. 1988). When considering motions for summary judgment in discrimination cases, the court applies these criteria with added rigor because the matters of intent and credibility are crucial issues. *See Sarsha v. Sears*, *Roebuck, & Co.*, 3 F.3d 1035, 1038 (7th Cir. 1993).

### B.     Discrimination

Title VII forbids an employer covered under the Civil Rights Act "to discharge any individual . . . because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). A plaintiff seeking relief under Title VII can prove discrimination using the "direct" method or the indirect, burden-shifting method outlined by the Supreme Court in

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060-1061 (7th Cir. 2003).

Mr. Christian contends that he has established that he is entitled to a trial using the indirect method of proof. To establish a prima facie case of discrimination using the indirect method, he must show that: (1) he is a member of a protected class; (2) he was meeting his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) other similarly-situated employees who were not members of the class were treated more favorably. *See, e.g., Keri v. Board of Trustees of Purdue University*, 458 F.3d 620, 643 (7th Cir. 2006).

If Mr. Christian establishes a prima facie case of discrimination, the ISBE must then produce evidence of a legitimate, non-discriminatory reason for taking the adverse employment actions at issue. *See id*. If it proffers such a reason, the burden then shifts back to Mr. Christian, who must demonstrate that the ISBE's proffered reason is pretextual. *See id*.

### 1. Adverse Employment Action

The ISBE contends that Mr. Christian's race discrimination claim fails because, among other things, he did not suffer an adverse employment action and thus cannot state a prima facie case of discrimination. An adverse action occurs when an employee is fired or demoted, suffers a decrease in benefits or pay, or is given a significantly lesser job. *Hill v. American General Finance, Inc.*, 218 F.3d 639, 644 (7th Cir. 2000); *Crady v. Liberty National Bank & Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993) (an adverse employment action is one that materially affects the terms and conditions of employment). However, not every unwelcome employment action qualifies as an adverse action as negative reviews, a change in job title, an increased distance to travel to work, or a lateral transfer do not, by themselves, qualify. *See id*., *see also*

*Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1988) ("A tangible employment action constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits"); *Crady v. Liberty Nat'l Bank & Trust Co. of Indiana*, 993 F.2d at 136 (a materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation).

The court will focus on the events which Mr. Christian highlights in his opposition to the ISBE's motion for summary judgment, since the burden falls on Mr. Christian to point to facts showing a genuine issue of material fact. According to Mr. Christian (Plaintiff's Response at 9-10), the following events constitute an adverse employment action: (1) the denial of requested sick and personal leave and the inability to use leave as desired; (2) lost income flowing from the docking of Mr. Christian's pay when he was physically unable to come to work; (3) Mr. Wolfe's December 13, 2004, interim evaluation rating Mr. Christian's performance as "unsatisfactory" which resulted in a lower annual bonus which, in turn, decreased Mr. Christian's overall salary and thus negatively impacted his retiree's pension.

(1) and (2) go together, because if the ISBE was entitled to refuse to allow Mr. Christian to take leave as he desired, then it cannot be faulted for not paying him when he took time off. Mr. Christian contends that Mr. Wolfe improperly required him to obtain advance permission or provide medical documentation to take sick leave, that the ISBE refused to let him take sick leave, and docked his pay when he was too ill to work. He then concludes that the denial of

9

permission to take sick and personal leave is a material loss of benefits which rises to the level of an adverse employment action.

The court acknowledges that Mr. Christian was undoubtedly dissatisfied with the denial of his leave requests and that he lost an unspecified amount of money after the ISBE docked his pay when he failed to appear at work due to his claimed illnesses. Nevertheless, an employer's refusal to allow an employee to take sick and personal days as he or she desires does not rise to the level of an adverse employment action. *See Rhodes v. Illinois Dept. of Transp.*, 359 F.3d 498, 505 (7th Cir. 2004) (being marked absent without pay is not an actionable adverse employment action); *Covello v. City of Chicago*, 448 F.Supp.2d 987, 994 (N.D. Ill. 2006) (denial of permission to use sick leave "does not amount to an adverse action because it had only a negligible impact on [the plaintiff's] income and did not cause him material harm"); *Campbell v. Henderson*, No. 00 C 6837, 2002 WL 1732361 at *8 (N.D. Ill. Jul. 26, 2002) (three denials of vacation requests did not constitute a material loss of benefits), *aff'd sub nom. Campbell v. Potter*, 57 Fed. Appx. 267 (7th Cir. 2003) (unpublished order). The court thus disagrees with Mr. Christian's position that the ISBE's denial of permission to take leave with pay is a per se adverse employment action.

Moreover, the Seventh Circuit has held that requiring an employee to substantiate that her absences from work were illness-related did not result in tangible job consequences and therefore was not an actionable adverse employment action. *Longstreet v. Ill. Dept. of Corrections*, 276 F.3d 379, 384 (7th Cir. 2002). This means that the ISBE's requirement that Mr. Christian provide documents to substantiate his need for medical leave is not an adverse employment action. In this regard, the court notes that the record does not show, contrary to

suggestions by Mr. Christian, that the collective bargaining agreement governing the ISBE allows employees to take unlimited sick leave at their sole discretion and with no prior notice.

Similarly, the ISBE's requirement that Mr. Christian obtain advance permission to take days off is not an adverse employment action because he has not pointed to any evidence suggesting that this materially altered the terms and conditions of his employment. *See Covello v. City of Chicago*, 448 F.Supp.2d at 994 (denial of sick day to city employee who failed to follow proper procedures did not materially harm him); *see also Crady v. Liberty National Bank & Trust Co. of Indiana*, 993 F.2d at 136 (job requirements do not qualify as adverse actions merely because the employee is dissatisfied with them).

With respect to the "unsatisfactory" evaluation, the Seventh Circuit has held that a negative performance evaluation by itself does not rise to the level of an adverse employment action. *Grube v. Lau*, 257 F.3d 723, 729 (7th Cir. 2001) ("unfair reprimands or negative performance evaluations, unaccompanied by some tangible job consequence, do not constitute adverse employment actions"). Instead, "the adverse action must materially alter the terms and conditions of employment." *Stutler v. Ill. Dept. of Corr.*, 263 F.3d 698, 703 (7th Cir. 2001). Examples of a material alteration include a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id*.

Mr. Christian contends that his performance rating lowered his annual bonus which, in turn, decreased his overall salary and negatively impacted his pension. However, he does not point to any evidence showing that the effect led to a "significant" change in benefits. *See id*. Instead, his argument appears to be that he ultimately felt some financial repercussions due to

the negative performance review and thus suffered an adverse employment action. Unfortunately for Mr. Christian, however, the Seventh Circuit has rejected this kind of generalized cause and effect argument, stating that negative effects flowing from a negative review do not automatically constitute an adverse employment action because they are not "an inevitable consequence of every reprimand" since "job-related criticism can prompt an employee to improve [his] performance and thus lead to a new and more constructive employment relationship." *Whittaker v. Northern Illinois University*, 424 F.3d 640, 648 (7th Cir. 2005) (internal citations and quotations omitted).

With respect to both the leave and the negative performance review, the fundamental question is, therefore, whether the financial repercussions from these events rise to the level of a material alteration in the terms and conditions of employment. *See Burlington Indus. v. Ellerth*, 524 U.S. at 761 (focusing on whether the employment action led to a significant change in employment status or caused a significant change in benefits); *Crady v. Liberty Nat'l Bank & Trust Co. of Indiana*, 993 F.2d at 136 (focusing on whether a decrease in salary was material or tantamount to a demotion). The plaintiff bears the burden of pointing to evidence supporting such a conclusion, but Mr. Christian has merely argued that he suffered a loss, without attempting to quantify the loss, based on the incorrect assumption that any negative financial effect is sufficient to establish an adverse employment action.

Leaving the court to scour the record to locate evidence supporting a party's position is a risky litigation strategy. *Pourghoraishi v. Flying J., Inc.*, 449 F.3d 751, 754, n.1 (7th Cir. 2006). Instead, the litigants bear the responsibility of directing the court to specific portions of the record, and a plaintiff opposing a motion for summary judgment must set forth specific facts

showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. at 322. Leaving the court to forage for evidence relating to the amount of income lost due to the denial of sick leave does not meet this standard. Thus, the adverse employment actions proffered by Mr. Christian – denial of sick/annual leave and the negative performance reviews – do not rise to the level of an adverse employment action.

All is not lost for Mr. Christian, however, because as the court was studying the parties' fact statements in a fruitless effort to figure out if Mr. Christian lost more than a nominal amount of money due to the sick leave situation discussed above, the court stumbled on the uncontested fact that on July 15, 2005, Mr. Wolfe gave Mr. Christian a ten-day suspension without pay, which Mr. Christian asserts was discriminatory.[2] A ten-day suspension without pay is an adverse employment action. *See, e.g., Whittaker v. Northern Illinois University*, 424 F.3d 640, 647 (7th Cir. 2005) (three-day suspension without pay constitutes an adverse employment action). Mr. Christian failed to bring the suspension to the court's attention and thus forfeited any argument based on the suspension. Nevertheless, the court is troubled by the possibility that, despite the forfeiture, Mr. Christian might have a meritorious claim. Thus, it will consider pretext.

### 2. Pretext

Mr. Christian's four-paragraph discussion of pretext focuses on his negative reviews and the denial of sick leave, neither of which are adverse employment actions. Mr. Christian, therefore, has not provided any argument regarding the only adverse employment action at issue

---

[2] The court gleans Mr. Christian's position about his suspension from the fact that the suspension is on the ISBE's master list of events which allegedly show that the ISBE discriminated against him.

13

in this case (the ten-day suspension without pay). The Seventh Circuit has noted that federal judges are not like pigs, searching for truffles in summary judgment records. *Corley v. Rosewood Care Center, Inc.*, 388 F.3d 990, 1001 (7th Cir. 2004). Nevertheless, in the interests of resolving this issue on the merits if possible, the court searched through the parties' Rule 56 submissions using WordPerfect's search function looking for the word "suspension."

All it was able to locate was the uncontested fact that the suspension followed a June 23, 2005, pre-disciplinary meeting regarding Mr. Christian's "continued failure to comply with directives he was issued by Mr. Wolfe or Ms. Ferdinand, as well as [his] failure to complete assignments within a reasonable time. Specifically, [Mr. Christian] had not completed any audits since he received a written reprimand on March 16, 2005." ISBE's Rule 56 Statement at ¶ 63. This is a legitimate, non-discriminatory reason supporting the suspension. The burden then shifts back to Mr. Christian, who must demonstrate that the ISBE's proffered reason is pretextual. Mr. Christian contends that he received the 10-day suspension because he was "spending too much time in the district." This does not respond to the ISBE's proffered reason and thus does not show that it is pretextual. Accordingly, the ISBE is entitled to summary judgment on Mr. Christian's race discrimination claim.[3]

---

[3] In the portion of his brief addressing his hostile work environment claim, Mr. Christian notes that his termination within months of his retirement date shows that the ISBE created a hostile work environment. In his briefing of his race discrimination claim, Mr. Christian does not mention his termination, even in passing. He also agreed with the ISBE's statement of fact listing all of the alleged instances of racial discrimination, which did not include his termination. *See* ISBE's Facts at ¶ 10. However, Mr. Christian says elsewhere that he left the ISBE when he retired. Response at 6. Termination of employment is undoubtedly an adverse employment action (if indeed Mr. Christian was terminated and did not retire). However, the court can only go so far in attempting to resolve this case on the merits with minimal assistance from counsel. It declines to construe Mr. Christian's brief contrary to how it is written and to construct arguments and marshal evidence (to the extent that it exists or it is possible for the court to find

C.  **Hostile Work Environment**

To survive summary judgment on his hostile work environment claim, Mr. Christian must establish that: (1) he was subjected to unwelcome harassment, (2) due to his race, (3) which was severe and pervasive enough to alter the conditions of his environment and create a hostile and abusive working environment, and (4) there is a basis for employer liability. *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 863 (7th Cir. 2005). The ISBE contends that Mr. Christian has failed to point to evidence that satisfies the second and third prongs.

Mr. Christian points to the following facts in support of his hostile work environment claim. First, he contends that Michael Turk, a white Principal Consultant, saw Mr. Christian and Mr. Wolfe interact at unit meetings in a way which showed that Mr. Wolfe was discriminating against Mr. Christian, and Mr. Wolfe treated him badly when he was ill. Mr. Christian also contends that Mr. Wolfe caused Sydney Cochran, another African-American Principal Consultant, to receive less training than white employees. He also points to Mr. Turk's admission that he made errors in his work but during Mr. Turk's thirty-one years with the ISBE, he was never denied a sick or personal day. Finally, Mr. Christian asserts that "the Union filed a grievance against the ISBE alleging that the interim evaluations had a disparate impact." Plaintiff's Response at 12.

Because Mr. Christian does not provide any citations to the Rule 56 submissions, the court cannot meaningfully evaluate his arguments. Nevertheless, although the court is under no

---

it) showing that he was terminated and that his termination was the result of discrimination. Simply put, the court is taking Mr. Christian at his word, ignoring the portions of his filings where he says he retired, and considering his claim that he was terminated only in connection with his hostile work environment claim.

obligation to do so, the court used WordPerfect's search function to hunt through the Rule 56 statements for words used in Mr. Christian's arguments to try to locate pertinent evidence. This, along with the ISBE's submissions, has allowed the court to piece together the relevant facts. The court takes this opportunity, however, to note that Mr. Christian's counsel is playing with fire when she fails to provide the required citations to the record, as the complete lack of record support means that Mr. Christian's hostile work environment claim is forfeited. *See, e.g., Fitzpatrick v. City of Hobart*, No. 2:03-CV-359 PS, 2007 WL 1560281 at *7 (N.D. Ind. May 25, 2007) ("even though Plaintiffs gave the Court a comprehensive appendix containing various factual assertions, they never articulated in their brief which of those facts applied to which claim" so the court "regrettably" found that they had waived all of the claims which were not supported by specific citations to the record).

The court's WordPerfect search shows that Mr. Turk believed that Mr. Wolfe was "abrupt in his communications" with Mr. Christian during certain meetings and that Mr. Wolfe's interactions with Mr. Christian were "hostile," unlike his interactions with white principal consultants. The Seventh Circuit has noted that "harassment need not be explicitly racial in order to be probative of a hostile environment . . . [but] it is equally true that not every perceived unfairness in the workplace may be ascribed to discriminatory motivation merely because the complaining employee belongs to a racial minority." *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 863 (7th Cir. 2005). Thus, "the alleged harassment must be sufficiently connected to race before it may reasonably be construed as being motivated by the defendant's hostility to the plaintiff's race." *Id*. at 863-64, *quoting Luckie v. Ameritech Corp.*, 389 F.3d 708, 713 (7th Cir. 2004).

The conclusion that Mr. Wolfe's treatment of Mr. Christian was based on Mr. Christian's race flows from the fact that Mr. Wolfe treated Mr. Christian in an "abrupt" or "hostile" fashion and appeared to treat white employees better. But this could simply be a personality issue. Perhaps it is not, but the opposite conclusion (that the "abrupt" or "hostile" treatment was racially motivated) is conclusory. *See id*. (rejecting claim that racial hostility caused negative treatment of the plaintiff based on the fact that the plaintiff is African-American because the "'harassment' of which [the plaintiff] complains could just as readily have been perpetrated upon a white person without any alteration in its character or purpose").[4]

Second, Mr. Christian contends that Mr. Wolfe caused Sydney Cochran, another African-American Principal Consultant, to receive less training than white employees. A hostile work environment claim is actionable only if the alleged harassment is sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and the workplace is both subjectively and objectively offensive. *Roney v. Illinois Dept. of Transp.*, 474

---

[4] When discussing this portion of his hostile work environment claim, Mr. Christian also states that the ISBE refused to allow him to take sick time and docked his pay when he was being treated in the emergency room, made him travel 200 miles to take a fitness for duty exam when he could have taken one closer to home, disregarded the recommendation of his healthcare providers who requested that Mr. Christian avoid unnecessary stress, called Mr. Christian into pre-disciplinary meetings, and terminated his employment within months of his retirement date. Again, these actions could be viewed as discriminatory only to the extent that Mr. Christian is African-American, as no evidence ties them to any racially motivated animus. The court does not mean to disparage Mr. Christian's very real dissatisfaction with the ISBE's actions, but no evidence shows that this conduct was due to his race. Indeed, based on the record before the court, Mr. Christian may well have been treated the same if he had been a member of another protected class or had been white. In short, the record shows at best that the ISBE was unfeeling. However, calling this treatment racially motivated is speculative and thus is not enough to survive summary judgment.

F.3d 455, 463 (7th Cir. 2007). Mr. Christian's reaction to the allegedly discriminatory treatment of a co-worker does not satisfy this standard.

Third, Mr. Christian points to Mr. Turk's admission that Mr. Turk made errors in his work but during his thirty-one years with the ISBE, he was never denied a sick or personal day. Once again, while Mr. Christian may have been unhappy knowing that another ISBE employee had no issues obtaining permission to take sick or annual leave, this unhappiness simply does not rise to the type of severe, pervasive, and offensive conduct which can support a hostile work environment claim.

Fourth, Mr. Christian asserts that "the Union filed a grievance against the ISBE alleging that the interim evaluations had a disparate impact." The fact that a union filed a grievance shows that it believed that the ISBE was evaluating unspecified employees in an unfair manner. However, it lacks a specific connection to Mr. Christian's situation and thus does not create a triable issue of fact as to whether Mr. Christian's working conditions were severe and pervasive enough to alter the conditions of his environment and create a hostile and abusive working environment.

The court also has considered all of Mr. Christian's hostile work environment claims as a group to determine if, together, they are enough to withstand summary judgment. For the reasons discussed above, the court finds that, even as a group, they are not enough to show that the alleged harassment was due to his race and severe and pervasive enough to alter the conditions of his environment and create a hostile and abusive working environment. Thus, the ISBE is entitled to summary judgment.

## IV. Conclusion

For the reasons stated above, Mr. Christian's motion to strike [#84] and the ISBE's motion to strike [#78] are denied, and the ISBE's motion for summary judgment [#86] is granted. The clerk is directed to enter a Rule 58 judgment and terminate this case from the court's docket.


DATE: July 19, 2007

*Blanche M. Manning*
Blanche M. Manning
U.S. District Court Judge